# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

### CIVIL ACTION NO.

| | | |
|---|---|---|
| **LUIS D. MILLAN CRUZ,** | ) | |
| **FRANCISCO RAMOS** | ) | |
| **MORALES, MIGUEL A.** | ) | |
| **RODRIGUEZ PAGAN, JOSE L.** | ) | |
| **ARROYO ROSARIO, NELSON** | ) | |
| **MALDONADO LABOY,LUIS M.** | ) | |
| **DE LEON CRUZ, ORLANDO** | ) | |
| **DEL MORAL DIAZ, HECTOR** | | |
| **N. RAMOS MORALES,** | | |
| | | |
| **Plaintiffs,** | | |
| | ) | **CIVIL COMPLAINT** |
| **v.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **T.M. HARVESTING, INC. and** | ) | |
| **MANUEL BARAJAS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### PRELIMINARY STATEMENT

1.      This is an action for damages brought by six Puerto Rican migrant farm workers against T.M. Harvesting, Inc., and its principal and owner, Manuel Barajas, both of whom are farm labor contractors operating in central Florida.  The action is based on the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, *et* seq. ("AWPA"); and the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

2.      Plaintiffs seek to redress for violations of their rights during their recruitment and employment by Defendants.  Defendants were required by law to recruit Plaintiffs as a condition

of accomplishing their ultimate objective of obtaining certification from the United States Department of Labor to employ a crew of Mexican H-2A guest workers during the 2013-14 Florida citrus harvest.  Upon their arrival at the jobsite in Florida, Plaintiffs found a hostile work environment, unexpected and undisclosed job conditions, and constant comparison of their performance to the preferred crew of Mexican workers.

3.      Plaintiffs seek money damages to redress these violations of law.

## JURISDICTION AND VENUE

4.      This court has jurisdiction of this matter pursuant to 29 U.S.C. § 1854(a), this action arising under the Migrant and Seasonal Agricultural Worker Protection Act; by 29 U.S.C. § 216(b), this action arising under the Fair Labor Standards Act.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (c) and 29 U.S.C. § 1854(a).. **Villalobos vs. NCGA 42F.Supp.2d131** Opinion of Honorable Judge J. Fusté. A substantial part of the events giving rise to this action occurred in this district and Defendants are subject to personal jurisdiction in this district.

## PARTIES

6.      Plaintiffs are United States citizens who maintain their permanent homes in Puerto Rico.  Plaintiffs were migrant agricultural workers within the meaning of the AWPA, in that they were employed on a seasonal basis harvesting oranges in Florida and were during that time required to be absent overnight from their permanent homes in Puerto Rico.  Plaintiffs are United States workers ("U.S. workers") within the meaning of 20 C.F.R. § 655.103(b). Plaintiffs' primary language is Spanish.  At all times relevant to this action, Plaintiffs were employed in the production of citrus fruit for sale in interstate commerce.

7.      In accordance with 29 U.S.C. § 216(b), Plaintiffs have consented in writing to be parties to this FLSA action.  Their written consents are attached to this complaint as Exhibit 1.

8.      Defendant T.M Harvesting, Inc., is a Florida limited liability company with its principal place of business in Lake Placid, Florida.  At all times relevant to this action, T.M. Harvesting was registered and acted as a farm labor contractor within the meaning of the AWPA in that, for a fee or other valuable consideration, it recruited, hired, furnished and transported Plaintiffs and other migrant and seasonal agricultural workers for agricultural employment.  At all times relevant to this action, T.M. Harvesting, Inc., employed Plaintiffs within the meaning of the FLSA and the regulations governing the temporary agricultural labor program in that it hired them for their jobs, provided daily work assignments, supervised their work, established their wage rates, paid them their wages and ultimately fired them from their jobs.

9.      Defendant Manuel Barajas is a resident of Lake Placid, Florida.  He is the president and owner of Defendant T.M Harvesting, Inc.  At all times relevant to this action, Defendant Manuel Barajas was registered and acted as a farm labor contractor within the meaning of the AWPA in that, for a fee or other valuable consideration, he recruited, hired, furnished and transported Plaintiffs and other migrant and seasonal agricultural workers for agricultural employment.  At all times relevant to this action, Manuel Barajas employed Plaintiffs within the meaning of the FLSA and the regulations governing the temporary agricultural labor program in that he hired them for their jobs, provided daily work assignments, supervised their work, established their wage rates, paid them their wages and ultimately fired them from their jobs.

**STATUTORY AND REGULATORY FRAMEWORK**

10.     An agricultural employer anticipating a shortage of labor to perform seasonal or temporary jobs may import aliens to fill these positions if the United States Department of Labor ("USDOL") certifies that two conditions are met: (1) there are not enough U.S. workers ready and available to perform the jobs and (2) the hiring of alien workers will not adversely affect the wages and working conditions of similarly-employed U.S. workers.  8 U.S.C. §§1101(a) (15) (H) (ii) (a) and §1188(a) (1); 20 C.F.R. § 655.103(a).  Aliens admitted in this fashion are commonly referred to as H-2A workers, based on the section of the Immigration and Nationality Act that authorizes their admission.

11.     Agricultural employers seeking the admission of H-2A workers must file a temporary labor certification application with the USDOL.  20 C.F.R. 655.130.  This application must include a job offer, commonly referred to as a "clearance order or job order, complying with applicable regulations.  20 C.F.R. §§ 655.121 and 655.130(a).  These regulations establish the minimum benefits, wages and working conditions which may be offered in order to avoid adversely affecting similarly-employed United States workers.  20 C.F.R.  655.122(c).  The job order serves as the employment contract between the petitioning employer and those workers hired to perform the job duties described therein.  20 C.F.R. § 655.122(q).

12.     Employers seeking to hire H-2A workers must offer U.S. workers at least the same benefits, wages and working conditions that it offers to H-2A workers.  Furthermore, putative H-2A employers may not impose on U.S. workers any restrictions or obligations that they will not also impose on H-2A workers.  20 C.F.R. § 655.122(a).  Any job qualification or requirement, including productivity requirements, must be bona fide and consistent with the normal and accepted requirements of employers in the same crops who do not employ H-2A workers.  20 CF.R. § 655.122(b).

- 4 -

13. The job order submitted by a putative H-2A employer must include a number of specific job terms. 20 C.F.R. § 655.122. Among other things, the employer must:

- Provide to any non-local worker free housing meeting applicable OSHA safety and health standards for temporary labor housing. 20 C.F.R. § 655.122(d);

- Provide the worker free of charge with all tools and equipment needed to perform the job. 20 C.F.R. § 655.122(f);

- Reimburse to those workers completing the first 50% of the work contract period the costs of inbound transportation from the worker's home to the employer's jobsite and subsistence en route. 20 C.F.R. § 655.122(h)(1);

- Provide or pay for the return transportation to the worker's home and subsistence en route for those workers completing the contract period. 20 C.F.R. § 655.122(h)(2);

- Offer the worker employment for at least 3/4 of the hours set out in the job order, or pay compensation to the worker for any shortfall under this guarantee. 20 C.F.R. § 655.122(i);

- Pay the worker weekly wages at least equal to the applicable adverse effect wage rate. 20 C.F.R. § 655.12(1);

- Notify the USDOL National Processing Center and the Department of Homeland Security in writing within two days of terminating any worker hired under the job order. 20 C.F.R. § 655.122(n); and

- Offer wages and working conditions no less than the prevailing wages and working conditions among similarly-employed agricultural workers in the area of intended employment.  20 C.F.R. § 653.501(d)(4).

14.     As part of its temporary labor certification application, an employer seeking to import H-2A workers must, *inter alia*, agree to cooperate with state workforce agencies and otherwise independently engage in positive recruitment of U.S. workers for the positions for which H-2A workers have been requested.  20 C.F.R. § 655.135(c).  The employer must engage in positive recruitment within a multistate region of traditional or expected labor supply where the USDOL certification officer finds there are a significant number of qualified U.S. workers who, if recruited, will be willing and able for work at the place and time requested.  20 C.F.R. § 655.154(a).  The employer must agree to provide employment to any qualified, eligible U.S. worker who applies to the employer up until through the first 50 percent of the period of employment set out in the job order.  20 C.F.R. § 655.135(d).

## FACTS

15.     On or about January 22, 2014, Defendant T.M. Harvesting, Inc., applied to the USDOL for permission to hire thirty four (34) H-2A workers to do field work harvesting citrus fruit for a period starting March 15, 2014 and extending through June 30, 2014.  The temporary labor certification application and the accompanying job order were signed by Defendant Manuel Barajas.  The job order incorporated the regulatory terms described in Paragraph 13.  The job order required no prior experience and contained no statement regarding any minimum production standard required of workers hired for the positions.  It included a statement, signed by Manuel Barajas, that "the job offer describes the actual terms and conditions of employment being offered by me and contains all material terms and conditions of the job."  The Job Order

- 6 -

established an hourly rate of 10.26 an hour, 36 hours of work a week and a period of

employment from March 15, 2014 to June 30, 2014. A copy of the 2014 T.M Harvesting job

order is attached as Exhibit 2.

16.     T.M. Harvesting, Inc. and Manuel Barajas had employed approximately forty nine

(49) Mexican H-2A workers during the 2012-13 Florida citrus harvest season and filed the

temporary labor certification application described in Paragraph 15 in order to, once again, hire

Mexican H-2A workers for their operations, including many of the Mexican nationals employed

as H-2A workers during the prior harvest season.

17.     In accordance with 20 C.F.R. § 655.154(a), the USDOL certification officer

determined that there was a significant number of qualified U.S. workers in Puerto Rico willing

and able to fill the openings in Defendants' job order, which was subsequently transmitted to

Puerto Rico.  The Puerto Rico Department of Labor began assisting Defendants in recruiting

U.S. workers located there to fill the openings described in the job order.

18.     In March of 2014, Plaintiffs, each of whom was unemployed, learned of the

possibility of doing farm work in Florida under Defendants' job order while visiting the

Humacao local office of Puerto Rico Department of Labor.

19.     After the terms of Defendants' job order were explained to them by

representatives of the Puerto Rico Department of Labor and following a telephone conversation

with Defendant Manuel Barajas, Plaintiffs were recruited and hired to perform the job duties

described in Defendants' job order.  The job order served as the employment contract between

Plaintiffs and Defendants and constituted a working arrangement within the meaning of the

AWPA, 29 U.S.C. § 1822(c).

20.     Using their savings or borrowed funds, Plaintiffs traveled on March 15, 2014, from Puerto Rico to Florida in order to work for Defendants.  Each Plaintiff spent Two Hundred Fourteen Dollars ($214) for the airfare between Puerto Rico and Orlando, Florida.  Plaintiffs were never reimbursed by Defendants for these transportation expenses.

21.     Upon arrival in Lake Placid, Plaintiffs were assigned to housing by Defendants. This housing was owned or controlled by Defendants, within the meaning of the AWPA, 29 U.S.C. § 1823.  The two trailers in which Plaintiffs were housed were in bad condition and dirty. There were no utensils or other equipment for Plaintiffs to prepare and cook their meals.  The trailers were infested with rats and vermin.

22.     Plaintiffs began work on March 17, 2014.  Despite the promises in the job order, Plaintiffs were not offered working conditions at least equal to those of Defendants' Mexican H-2A employees.  Plaintiffs were offered less work than the H-2A's and were assigned to less productive areas to pick.

23.     Plaintiffs worked for approximately five days.  Other than on Plaintiffs' initial day of work, Defendants failed to have drinking water available for Plaintiffs at the jobsite as required by OSHA regulations at 29 C.F.R.  § 1928.110.

24.     Shortly after beginning work, Plaintiffs were informed by Defendant Manuel Barajas that they would be required to vacate their quarters in Defendants' trailers in order to accommodate arriving H-2A workers from Mexico.

25.     On March 21, 2014, Defendant Manuel Barajas terminated Plaintiffs' employment and ordered them to vacate the trailers.  Defendant Barajas informed Plaintiffs that they were being terminated because they had failed to meet some sort of production standard, even though the job order contained no mention of a production standard.

- 8 -

26.     Following their termination by Defendants, Plaintiffs returned to Puerto Rico at their own expense.

27.     Defendants neither provided Plaintiffs with at least 3/4 of the hours promised in the job order nor paid them for the shortfall as required by the job order and 20 C.F.R. § 655.122(i).

**COUNT I**
**(MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT)**

28.     This count sets forth a claim by Plaintiffs' for Defendants' violations of the AWPA and its implementing regulations.

29.     Defendants violated the rights of Plaintiffs under the AWPA in that, among other things, they:

a.  failed to ensure that the accommodations provided to Plaintiffs as described in Paragraph 21 complied with substantive Federal and State standards applicable to the housing, in violation of 29 U.S.C. § 1823(a) and its attendant regulations, 29 C.F.R. § 500.130;

b.  failed to pay Plaintiffs their wages promptly when due, in violation of 29 U.S.C. § 1822(a).  Plaintiffs' wages fell below both the FLSA minimum wage and applicable adverse effect wage rate of Ten Dollars with Twenty Six Cents ($10.26) per hour as a result of Defendants' failure to reimburse Plaintiffs as part of their first week's wages for their travel expenses from Puerto Rico to Florida, in the amount of Two Hundred Fourteen Dollars ($214.00).;

c.  violated without justification the terms of their working arrangements with Plaintiffs, as embodied in the job order.  Among other things, Defendants:

i. failed to include a material term and condition of employment in the job order, *i.e.*, the production standard which Plaintiffs allegedly failed to meet and which resulted in their termination on March 21, 2014;

ii. failed to pay Plaintiffs at least the applicable adverse effect wage rate for their work;

iii. failed to provide Plaintiffs with housing meeting OSHA safety and health standards;

iv. failed to provide drinking water at the jobsite as required by OSHA regulations;

v. failed to offer Plaintiffs working conditions at least equal to those offered Defendants' H-2A workers;

vi. failed to provide or pay for inbound and outbound transportation expenses, and for subsistence en route; and

vii. failed to offer Plaintiffs work for 3/4 of the hours listed in the job order or payment for any shortfall.

30. Defendants' violations of the AWPA as set forth in this Count were the natural consequences of Defendants' conscious and deliberate acts and were thereby intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

31. As a result of Defendants' violations of the AWPA as set forth in this count, Plaintiffs are entitled to recover their actual damages or up to Five Hundred Dollars ($500) in statutory damages for each violation of the Act.

## COUNT II
## (FAIR LABOR STANDARDS ACT)

32.     This count sets forth a claim by Plaintiffs for Defendants' violation of the minimum wage provisions of the FLSA.

33.     Defendants violated the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs workweek wages of at least Seven Dollars with Twenty Five Cents ($7.25) for every compensable hour of labor they performed.  Plaintiffs worked Thirty Six (36) hours in the week of March 17 to March 21, and were paid Three Hundred Sixty Nine Dollars with Thirty Six Cents ($369.36) the equivalent of Ten Dollars with Twenty Six Cents ($10.26) an hour.  Each Plaintiff spent Two Hundred Fourteen Dollars ($214.00) for his airfare from Puerto Rico to Florida, effectively reducing this hourly pay to Four Dollars with Thirty Six Cents ($4.36) an hour.

34.     The violations of the FLSA set out in Paragraph 33 resulted from Defendants' failure to reimburse Plaintiffs during their first week of work for travel expenses incurred which were primarily for the benefit of Defendants.

35.     As a consequence of Defendants' violations of their rights under the FLSA, Plaintiffs are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, costs of court, and a reasonable attorney's fees pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

a.  Declaring that Defendants intentionally violated Plaintiffs' rights under the AWPA as set out in Count I;

b.  Entering judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' AWPA claims as set out in Count I and awarding each Plaintiff his

- 11 -

actual damages or Five Hundred Dollars ($500) in statutory damages, whichever is greater, for each violation of the AWPA set out in that count;

c.  Declaring that Defendants violated Plaintiffs' rights under the FLSA;

d.  Entering judgment in favor of Plaintiffs and against Defendants, jointly and severally on Plaintiffs' FLSA claims as set out in Count II and awarding each Plaintiff his unpaid minimum wages and an equal amount as liquidated damages;

e.  Awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law;

f.  Awarding Plaintiffs the costs of this action;

g.  Awarding Plaintiffs a reasonable attorney's fee with respect to their claims under the FLSA, and

h.  Granting Plaintiffs such other relief as this Court deems just and proper in the public interest.

Respectfully Submitted,

S/Julio M. López Keelan
_____
Julio M. López Keelan
USDC 121011
Puerto Rico Legal Services
Migrant Farmworker Project
PO Box 21370
San Juan, P.R, 00928-1370
787-296-8020
-
jlopezk@servicioslegales.org
juliolopezkeelan@gmail.com